## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**ERIC FOSTER,**
**Petitioner Below, Petitioner,**

**vs) No. 14-1023** (Nicholas County No. 08-C-139)

**DAVID BALLARD, WARDEN,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent.**

**FILED**
**November 4, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

The petitioner (petitioner below), Eric Foster (the "petitioner"), by counsel, Crystal L. Walden, appeals from the final order of the Circuit Court of Nicholas County entered September 10, 2014, through which his petition for a writ of habeas corpus was denied. The respondent, David Ballard, Warden, Mount Olive Correctional Complex (the "State"), by counsel, Shannon Frederick Kiser, filed a summary response to which the petitioner filed a reply brief. On appeal, the petitioner asserts that the circuit court erred in denying him habeas corpus relief based on his allegations of ineffective assistance of his trial counsel.

Upon our consideration of the parties' briefs, the appendix record, and the pertinent legal authorities, the Court finds no substantial question of law or prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of our Rules of Appellate Procedure.

### I. Facts and Procedural History

On December 30, 2003, the petitioner engaged in a physical confrontation with Travis Painter with whom there had been prior animus. During this particular confrontation, Painter pulled a gun on the petitioner. The petitioner testified at trial that after this particular confrontation ended, Painter invited him to the camper of his brother-in-law, Mike Murphy, to "talk things out." The State presented evidence at trial that the petitioner's girlfriend was upset, tearfully begging the petitioner not to go to Murphy's camper, which appears to have been located in a somewhat remote area. Notwithstanding his girlfriend's plea, the petitioner drove his truck to Murphy's camper close to midnight on December 30. The petitioner,

1

however, did not go alone. Two persons accompanied the petitioner: his friend, Matt Bush, and Bush's friend, Jeff Stewart, who took along a shotgun.

There was evidence at trial that upon the trio's arrival at Murphy's camper, Painter shone a spotlight in the direction of the petitioner's truck after which both he and Murphy exited the camper with firearms and walked to the truck. The petitioner testified at trial that he felt it was an ambush. Conversely, it was the State's theory at trial that this was not an ambush; rather, the petitioner, Bush, and Stewart formulated their own plan to arm themselves with weapons and travel to Murphy's camper for revenge and to end their fight once and for all.

Both the petitioner and eyewitness Kimberly Halstead testified that the first shot was fired from inside the petitioner's truck, after which a gunfight ensued. Murphy was shot twice, dying from a shotgun wound to the chest, and Painter died of a .22-caliber bullet to the brain. After the shooting, the petitioner drove Bush and Stewart to Bush's residence, where the police would later find both weapons hidden. While there, the petitioner tended a gunshot wound to his finger. The petitioner then returned to his home where he telephoned 911 to report that his truck had been shot numerous times, failing to mention to the 911 operator that Murphy and Painter had been shot.

The petitioner, Bush, and Stewart were each charged in a seven-count indictment with two counts of murder in the first degree, two counts of malicious assault, and three counts of wanton endangerment with a firearm.[1] Prior to trial, the State extended a written plea offer dated September 28, 2004, that would have allowed the petitioner to plead guilty to one count of second degree murder and one count of voluntary manslaughter in exchange for a dismissal of the remaining counts in the indictment. The petitioner alleged in the instant habeas proceeding that his trial counsel never conveyed this plea offer to him.

On October 5, 2004, the first day of trial, the State extended a second, substantially more favorable plea offer, which would have allowed the petitioner to plead guilty to a single count of second degree murder. The petitioner rejected this plea offer. Thereafter, the State

---

[1]Jeremy Hanna, another eyewitness, was the alleged victim in the third count of wanton endangerment. He gave a statement to the police indicating that the first gunshot came from inside the petitioner's truck and, that upon hearing gunfire, he ran from the camper with a loaded weapon and began firing in the direction of the petitioner's truck from which gunfire was returned.

proceeded at trial on the two counts of first degree murder.[2]  The State's theory at trial was that the petitioner had acted in concert with Bush and Stewart following the petitioner's physical confrontation with Painter earlier in the day and, as a result, Murphy and Painter were killed.

The petitioner testified at trial concerning his version of the events in question. According to his testimony, the petitioner knew that Stewart had the shotgun with him as they drove to Murphy's camper, but believed Stewart intended to trade the shotgun for drugs.[3]  He further testified that he was unaware that a .22-caliber pistol was also in his truck and that he did not know that a gunfight was going to occur.  After Stewart reached across him with the shotgun and shot Murphy, the petitioner testified that he ducked to the floor of his truck to avoid the ensuing gunfire.  Although he did not know who fired the .22 caliber pistol that killed Painter, the petitioner testified that he did not shoot anyone.

On October 7, 2004, the jury returned its verdict finding the petitioner guilty of two counts of second degree murder, a lessor included offense of the counts charging first degree murder.  He was sentenced to two consecutive forty-year terms of incarceration.  In *State v. Foster*, 221 W.Va. 629, 656 S.E.2d 74 (2007), this Court affirmed his convictions and sentencing.

On August 6, 2008, the petitioner filed a pro se petition for a writ of habeas corpus. Thereafter, the petitioner was appointed counsel and an amended petition for habeas relief was filed on July 1, 2012.  Various bases for habeas relief were advanced, including ineffective assistance of trial counsel, Gregory Hurley.

An omnibus habeas hearing was held before the circuit court on September 12, 2013, and October 18, 2013.  Those persons testifying during this hearing included the petitioner; Gregory Campbell, the petitioner's legal expert; Jeremy Hanna;[4] and Mr. Hurley, who

---

[2]The trial court granted the State's motion to dismiss the remaining counts of the indictment.

[3]Notwithstanding's the petitioner's trial testimony that he believed Stewart intended to trade the shotgun for drugs, in his statement given to the police, which was introduced at trial, the petitioner said that Stewart "had some dealings with them [Murphy and Painter] before and he wasn't cutting them off no more on something,  I don't know what the hell that was about and he [Stewart] went into Matt's [Bush's] room and got a gun, a shotgun."

[4]The petitioner's sister, Valena Kidd, and his cousin, Ricky Johnson, also testified.

admitted to suffering from alcoholism during the time he represented the petitioner.[5] Based upon the evidence presented, the circuit court entered its final order denying a writ of habeas corpus on September 10, 2014.

In its forty-two-page final order, the circuit court found a single possible instance of ineffective assistance of counsel—the possibility that Mr. Hurley did not advise the petitioner of the State's initial plea offer. The court stated that even if it assumed Mr. Hurley failed to communicate this plea offer, it questioned the truthfulness of the petitioner's testimony that he would have taken that initial plea offer had he been aware of it given his rejection of the subsequent and unquestionably more advantageous trial-day plea offer. Accordingly, the circuit court ruled that the petitioner failed to meet the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984), as adopted in syllabus point five of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), which required him to prove by a preponderance of the evidence that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.*, 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5, in part. It is from this final order that the petitioner appeals.

## II. Standard of Review

Of the many issues raised below, the petitioner only assigns error concerning the circuit court's rulings on the petitioner's claims of ineffective assistance of counsel. The petitioner argues on appeal that Mr. Hurley was ineffective for failing to act as an effective advocate on his behalf during plea bargaining, including Mr. Hurley's alleged failure to advise him of the State's initial plea offer and to adequately prepare for and represent him at trial. Our review of the circuit court's final order denying habeas corpus relief is threefold: "We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

With this standard in mind, we proceed to determine whether the circuit court erred in denying habeas corpus relief to the petitioner.

---

[5]Mr. Hurley admitted that he was drinking alcohol during the evenings of the petitioner's trial, but testified that he never consumed alcohol during trial, nor was he intoxicated during trial.

## III. Discussion

The petitioner asserts that his trial counsel was ineffective during plea bargaining and in his trial preparation and performance. Our standard for evaluating counsel's effectiveness is well-settled. In *Miller*, this Court adopted the two-pronged test established in *Strickland*:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Miller*, 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5. This Court provided further guidance in *Miller*:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

194 W.Va. at 6-7, 459 S.E.2d at 117-18, syl. pt. 6. This Court cautioned that as a result of the rules and presumptions established in *Strickland* and its progeny, "the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. We explained that

> [t]his result is no accident, but instead flows from deliberate policy decisions this Court and the United States Supreme Court have made mandating that "[j]udicial scrutiny of counsel's performance must be highly deferential" and prohibiting "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]" *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95. In other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what

most good lawyers would have done.  We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*Id.* We bear these precepts in mind as we determine whether the circuit court correctly ruled that notwithstanding Mr. Hurley's personal difficulties at the time, the petitioner was unable to prove by a preponderance of the evidence that Mr. Hurley's assistance was deficient or ineffective or that the outcome of the criminal proceeding would have been different but for the alleged errors or tactical decisions made by Mr. Hurley.

## A.  Claim of ineffective assistance of counsel during plea bargaining

The petitioner testified below that he first learned of the State's initial plea offer from his habeas counsel.  He asserts that Mr. Hurley's failure to convey that plea offer to him constitutes ineffective assistance of counsel that could have changed the outcome of his criminal proceeding.  Mr. Hurley testified that he believed that he had communicated the initial plea offer to the petitioner, but he could not be absolutely certain.  Approximately ten years elapsed between the underlying criminal proceeding and the omnibus habeas hearing.

Guided by *Strickland* and *Miller*, the circuit court found that even if it assumed that Mr. Hurley rendered ineffective assistance of counsel under *State v. Becton*, 205 W.Va. 139, 516 S.E.2d 762 (1999),[6] by failing to communicate the initial plea offer, the petitioner still had to prove by a preponderance of the evidence that "the results of the proceedings would have been different if Mr. Hurley had communicated the written plea offer."  In this regard, the circuit court questioned the veracity of the petitioner's testimony that he would have accepted the initial plea offer given his rejection of the decidedly more advantageous plea offer extended to him on the morning of trial.  Consequently, the circuit court concluded that the petitioner had failed in his burden of proving that the results of the proceedings would have been different.  We agree.

The petitioner intersperses his arguments with statements concerning Mr. Hurley's admitted alcoholism during the time he represented the petitioner, alleging that Mr. Hurley

---

[6]*See Becton*, 205 W.Va. at 140, 516 S.E.2d at 763, *infra.*

smelled of alcohol, was sweating, and wore the same clothes throughout trial.[7] Curiously, however, it appears that none of these concerns regarding Mr. Hurley's alcoholism were raised in the petitioner's direct criminal appeal.[8] Nevertheless, like the circuit court, the issue we must determine is whether Mr. Hurley rendered effective assistance of counsel to the petitioner.

In addressing Mr. Hurley's alleged failure to communicate the State's initial plea offer, we note that the United States Supreme Court has provided guidance in this regard:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed . . . because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Missouri v. Frye*, __ U.S.__, __, 132 S.Ct. 1399, 1409 (2012). Similarly, we have held that

> [o]bjective professional standards dictate that a criminal defense attorney, absent extenuating circumstances, must communicate to the defendant any and all plea bargain offers made by the prosecution. The failure of defense counsel to communicate any and all plea bargain proposals to the defendant constitutes ineffective assistance of counsel, absent extenuating circumstances.

Syl. Pt. 3, *Becton*, 205 W.Va. at 140, 516 S.E.2d at 763.

Although there was conflicting testimony concerning whether Mr. Hurley advised the petitioner of the State's initial plea offer, assuming Mr. Hurley did not, the petitioner bore the burden of "demonstrat[ing] a reasonable probability [he] would have accepted the earlier

---

[7]The petitioner's sister, Ms. Kidd, testified similarly below. Mr. Hurley testified that while he was uncertain, he could not dispute that he was sweating or that he might have worn the same clothes throughout trial.

[8]*Foster*, 221 W.Va. 629, 656 S.E.2d 74.

7

plea offer." *Frye*, __ U.S. at __, 132 S.Ct. at 1409. Further, under the second prong of *Miller* and *Strickland*, the petitioner must also have proven by a preponderance of the evidence that the outcome of the proceedings would have been different, but for Mr. Hurley's failure to communicate the initial plea offer.

On the morning of trial, the petitioner was presented with a plea offer that would allow him to plead guilty to a single count of second degree murder with the remaining charges being dismissed. The petitioner alleges that he was unable to knowingly and intelligently consider this plea offer because he was rushed to consider it and because Mr. Hurley failed to keep him advised of the evidence against him; to visit him in the jail more than once; to go over discovery with him; to explain the legal theory of acting in concert;[9] or to discuss adequately with him the pros and cons of this trial-day plea offer. The petitioner conceded, however, that other than his inquiry regarding the penalty for second degree murder,[10] he did not ask Mr. Hurley any other questions regarding the plea offer. He also

---

[9]As we explained in *Foster*,

> Under the "acting in concert with" or "concerted action" theory of culpability, it was not necessary for the State to prove that the appellant was the absolute perpetrator of the crime, but rather that he was present at the commission of the crime and that he aided and abetted it; in other words, that he was a principal in the second degree to the commission of the crime.

221 W.Va. at 635, 656 S.E.2d at 80. We further explained in *Foster,*

> "Under the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator." Syllabus Point 11, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

*Foster*, 221 W.Va. at 632-33, 656 S.E.2d at 77-78.

[10]The petitioner contends that when he questioned Mr. Hurley about the penalty for second degree murder, Mr. Hurley told him the penalty was forty years imprisonment, omitting that he could be eligible for parole in ten years. Mr. Hurley testified that he recalled informing the petitioner that the trial court would likely impose the maximum penalty of forty years imprisonment, but that he would be eligible for parole in "10 years with a max out date in 20, barring losing good time[.]" *See* W.Va. Code§ 61-2-3 (2014) ("Murder of the second degree shall be punished by a definite term of imprisonment in the penitentiary which is not

(continued...)

conceded that a lot of the evidence that would be used against him was discussed at various hearings at which both he and Mr. Hurley were present.

Mr. Hurley testified that he did keep the petitioner informed of his case; that he visited the petitioner more than once; that he usually met with multiple clients when he visited the regional jail and recalled three or four visits to the jail; that he met with the petitioner regarding his case prior to multiple hearings, which he described as being far more involved than what the petitioner represented them to be; and that he did go over discovery with the petitioner, although he did not give him a copy of the discovery because it could "get loose" in jail. Importantly, Mr. Hurley testified that he encouraged the petitioner to accept the State's trial-day plea offer, explaining to him that the jury was going to be "very interested in finding a culprit" when confronted with two deceased victims. He further testified that although he had explained the legal theory of acting in concert with the petitioner, and thought the petitioner understood the concept, he believed the petitioner rejected this plea offer because he firmly believed that a jury would never convict him upon hearing his testimony regarding his version of the events surrounding the murders.

The circuit court found Mr. Hurley's testimony regarding these matters to be credible. We have noted that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995). Indeed, "where there is a conflict of evidence between defense counsel and the defendant, the circuit court's findings will usually be upheld." *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 327, 465 S.E.2d 416, 429 (1995). Following our review of the omnibus hearing transcript, we find no reason to depart from the deference we give to a circuit court's credibility determinations. Although the petitioner now contends that he would have accepted the State's initial plea offer, he testified that he rejected the more favorable trial-day plea offer because he felt like forty years was too long and because he "didn't feel that that was a just plea for me at the time."[11]

---

[10](...continued)
less than ten nor more than forty years. A person imprisoned pursuant to the provisions of this section is not eligible for parole prior to having served a minimum of ten years of his or her sentence or the minimum period required by the provisions of section thirteen, article twelve, chapter sixty-two, whichever is greater."). Mr. Hurley further testified that he believed the petitioner understood what a determinate sentence and parole eligibility were.

[11]The petitioner also testified that he had little time to consider this second plea offer because everyone involved in his trial were awaiting his response. Mr. Hurley testified that while they did not have a lot of time to consider the plea, he "felt like [he] had enough time

(continued...)

Significantly, if the petitioner did not feel that a single count of second degree murder carrying a potential maximum penalty of forty years incarceration was acceptable, we are disinclined to countenance his self-serving testimony that he would have accepted the State's initial plea offer that required him to plead guilty to one count of second degree murder *and* one count of voluntary manslaughter, thereby exposing him to not only a possible forty-year sentence, but to an additional determinate prison term of between three and fifteen years. *See Scott v. State*, No. CR 98-1167, 2009 WL 3047239, *5 (Ark. Sept. 24, 2009) ("By rejecting a more favorable plea offer on the eve of the jury trial, it is not reasonable or probably truthful for petitioner to now claim that he would have accepted the less-favorable initial plea offer had he only known about it[.]"). We agree with the circuit court that even if Mr. Hurley's communication with the petitioner was not "as frequent or effective as the Petitioner would have liked," the "[p]etitioner's argument exemplifies the adage that 'hindsight is 20/20[.]'" Certainly, the petitioner's hindsight does not prove that Mr. Hurley's performance was deficient, nor do we determine "whether counsel's conduct falls within the broad range of professionally acceptable conduct" by "view[ing] counsel's conduct through the lens of hindsight." Syl. Pt. 4, in part, *Legursky*, 195 W.Va. at 317, 465 S.E.2d at 419. Indeed, "[c]ourts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion." *Id.*

Unquestionably, post-conviction regret over rejecting a plea offer is not evidence that the outcome of the case would have been different, nor does it prove that the initial, indisputably less favorable plea offer would have been accepted by the petitioner. Accordingly, we affirm the circuit court's conclusion that the petitioner failed to prove an entitlement to habeas corpus relief based on Mr. Hurley's allegedly ineffective assistance of counsel in plea bargaining.

### B. Claim of ineffective assistance of counsel in trial preparation and performance

The petitioner also argues that the circuit court erred in not granting habeas corpus relief based on his allegations that Mr. Hurley rendered ineffective assistance of counsel in his trial preparation and performance. Rather than making reasonable investigations or reasonably determining that certain investigations were unnecessary, as required under

---

[11](...continued)
to explain to [the petitioner] what [he] needed to."

*Strickland*,[12] the petitioner asserts that Mr. Hurley relied upon evidence gathered by the State when he should have conducted an investigation, hired an investigator, contacted the petitioner's family members, and interviewed witnesses listed in the police report. He further asserts that Mr. Hurley failed to prepare him to testify and to be cross-examined, and failed to call eyewitness Hanna[13] to testify at trial. The petitioner asserts that the circuit court's dismissal of Mr. Hurley's failure to interview Hanna is contrary to *Ballard v. Ferguson*, 232 W.Va. 196, 751 S.E.2d 716 (2013), wherein this Court found that trial counsel's failure to investigate whether another suspect had a role in causing victim's death was unreasonable and constituted ineffective assistance of counsel. The petitioner contends that calling Hanna as a witness at trial would have made a difference because he could have corroborated his own testimony that the victims were the initial aggressors by exiting the camper under the influence of drugs and approaching his truck with firearms.

The State argues that Mr. Hurley's investigation and trial preparation were effective. Recounting Mr. Hurley's testimony, the State asserts that he did investigate the crime; that he was fully aware of the witnesses, including Hanna, and the facts of the case, which he shared with the petitioner; and that he discussed various theories of defense with the petitioner. The State argues that Mr. Hurley was able to successfully cross-examine witnesses at trial, including identifying deficiencies in the police investigation and indicating the toxicology report that demonstrated the victims were under the influence of narcotics. The State maintains that the circuit court correctly found that different actions by Mr. Hurley would not have produced a different result under *Strickland*.

As we consider these alleged deficiencies, we remain mindful that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the

---

[12]*See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

[13]In the proceedings below, the petitioner argued that Mr. Hurley should also have called his cousin, Ricky Johnson, and his sister, Valena Kidd, as witnesses at trial. Although the petitioner has not reasserted these particular arguments in the instant appeal, the circuit court concluded that although Johnson was present when the petitioner made a post-shooting call to 911, Johnson's testimony could have been harmful since the petitioner failed to mention the victims in his 911 call. Further, Ms. Kidd testified during the omnibus hearing concerning the petitioner's prior enmity with victim Murphy, which could have provided the petitioner with an additional motive for the shootings had Kidd testified at trial.

11

defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W. Va. 640, 643, 203 S.E.2d 445, 449 (1974). The circuit court correctly stated that counsel's performance is not viewed through the "lens of hindsight" but according to "what was known and reasonable at the time the attorney made his or her choices." *Legursky*, 195 W.Va. at 317, 465 S.E.2d at 419, syl. pt. 4, in part.

Mr. Hurley testified that he did not interview Hanna because he was already confident in what Hanna would say having spoken at length with co-defendant Stewart's counsel regarding his interview of Hanna. Mr. Hurley also testified that he reviewed the police report. This report would have contained Hanna's statement to the police regarding the shooting. In Hanna's statement, he stated that a "muzzle blast [came] out of the truck first." He further indicated that because he had not been able to see the occupants of the truck, he and his girlfriend, Kimberly Halstead, unwittingly went to Bush's house following the shooting to call for help. Once there, Hanna stated that he and his girlfriend were held at gunpoint for several hours by Bush and Stewart during which time he saw the petitioner hand a revolver to Bush.[14] Consequently, unlike *Ferguson*,[15] wherein the majority of this Court found that defense counsel was ineffective for failing to interview two witnesses who had given statements naming someone other than the defendant as the perpetrator of the crime, here, Hanna, would not have exonerated the petitioner.

In addition to the above, the circuit court noted in its final order that during the petitioner's trial, Mr. Hurley withdrew a motion for a continuance to allow him time to interview witnesses, explaining that a different defense theory was being pursued[16] and that he would not be using those witnesses.[17] When the trial court asked the petitioner whether Mr. Hurley had discussed this with him, whether he had adequate time to discuss it with his

---

[14]In his statement, Hanna was uncertain as to whether the petitioner handed the revolver to Bush or Stewart, as the three were huddled close together, but he believed it was handed to Bush.

[15]232 W.Va. 196, 751 S.E.2d 716.

[16]Mr. Hurley testified during the omnibus hearing that the defense strategy at trial was "that [the Petitioner] went up there innocently, did not take any further actions in furtherance of any offense, had no knowledge of what the co-defendants intended to do or were going to do, and, therefore, had no participation in the events that followed."

[17]While the appendix record does not contain a copy of the petitioner's motion for a continuance, the circuit court's order indicates the witnesses were Hanna, Kidd, and Johnson. *See supra* note 13.

lawyer, whether he was in agreement with the decision, and whether the petitioner "made that decision also," the petitioner responded affirmatively to each question.

Having reviewed the omnibus hearing transcript, we agree with the circuit court's conclusion that the failure to call Hanna did not reflect a lack of investigation by Mr. Hurley and that his proposed testimony "would not have added anything and could even have hurt the Petitioner's case."[18] In fact, the petitioner never explained how the outcome at trial would have been different had Mr. Hurley conducted the trial differently, nor did his evidence show that additional or better investigation would have assisted his case. Certainly, it is well within the realm of reasonable trial strategy for counsel to conclude that the risk of harmful testimony from a particular witness outweighed any beneficial testimony that witness might offer. Even the petitioner's legal expert agreed that there can be reasons not to call particular witnesses and agreed that Hanna could have been equally harmful and helpful had he been called as a witness at the petitioner's trial.[19] Certainly, Hanna would have testified that the first shot came from inside the petitioner's truck, and he would also have placed a revolver in the petitioner's hands on the night in question.

Importantly, the matters about which the petitioner contends that Hanna could have testified came in through other witnesses at trial. Kimberly Halstead, who was with Hanna at the scene of the crime, testified as a witness for the State. According to her testimony, upon hearing the petitioner's truck approach the camper, Painter shined a spotlight towards the petitioner's truck after which both he and Murphy exited the camper armed with weapons and walked directly to the petitioner's truck. Her testimony further indicated that the first shots came from the petitioner's truck, which was consistent with Hanna's statement to the police, as well as the petitioner's own trial testimony. Further, the medical examiner testified at trial that methamphetamine and marijuana were found in both victims. This, again, was something about which the petitioner contends Hanna could have testified, that is, that the victims were using drugs on the night in question. Perhaps most importantly, as indicated above, the petitioner expressly acquiesced to not calling the witnesses at trial.

We now turn to the petitioner's allegation that Mr. Hurley did not prepare him to testify and that he did not know that he would testify until just before he took the stand at

---

[18]We also agree with the circuit court when it made these same findings with regard to the other potential trial witnesses cited by the petitioner below: his sister, Valena Kidd, and his cousin, Ricky Johnson. *See supra* note 13.

[19]The petitioner states that Hanna testified at co-defendant Stewart's trial. Hanna's testimony does not appear to have altered the outcome of Stewart's trial since he, like the petitioner, was convicted of two counts of second degree murder.

trial. He argues that "[n]o competent lawyer would call a witness without appropriate and thorough pre-trial interviews and discussion." *United States v. Rhynes*, 218 F.3d 310, 319 (4th Cir. 2000). Mr. Hurley testified, however, that he did prepare the petitioner to testify, but agreed that the final decision as to whether the petitioner would take the stand was made during trial.

The circuit court found that even if it assumed that the petitioner was inadequately prepared to testify, he had not indicated that he would have testified differently or that the outcome of his trial would have been different had he been better prepared. The circuit court also recounted the petitioner's admission that he knew he would be cross-examined when he took the stand because he had just sat through two days of trial. Not only do we agree with the circuit court's assessment in this regard, our review of the trial transcript reveals that through his testimony, the petitioner was able to insist that he did not have a weapon; that he did not want a gunfight; that he ducked to the floor board of his truck after the first shot was fired; that he pushed in the clutch so that the truck would roll back and away from the scene; and that he did not know that the victims would be shot.

Regarding Mr. Hurley's closing argument, the petitioner asserts that Mr. Hurley failed to argue intent, malice, or concerted action, which was his last opportunity to advocate on his behalf. Not only did the circuit court find that the jury was instructed on these elements, including concerted action, "we . . . found no error in the instructions given at trial." *Foster*, 221 W.Va. at 644, 656 S.E.2d at 89. While the circuit court found that Mr. Hurley's closing argument was brief, it further noted that "[t]he test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. The circuit court concluded that the petitioner had failed to show by a preponderance of the evidence that no "reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue[,]" or that but for the allegedly deficient closing argument, the results of the proceeding would have been different. We concur.

The petitioner bore the burden of proving either that different actions would have produced a different result or that Mr. Hurley's trial preparation and performance was "deficient under an objective standard of reasonableness." *Miller*, 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5, in part. Certainly, we are mindful of Mr. Hurley's personal difficulties at the time of his representation of the petitioner; however, "[a] defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.'" *Id.*, 194 W.Va. at 16, 459 S.E.2d at 127. The petitioner failed to meet this difficult burden. Indeed, our review of the trial record reveals that Mr. Hurley performed

14

reasonably.[20] He was effective in his cross-examination of witnesses and objected to evidence where one would expect to see an objection. As indicated above, Mr. Hurley made a strategic decision not to call Hanna as a witness given his potential for providing harmful testimony.

Once the petitioner rejected the second, decidedly more favorable plea offer, Mr. Hurley did the best, and surely what a reasonable lawyer would have done, with the following facts: the petitioner was present at the scene of the crime; there was prior animosity between the petitioner and victim Painter; the petitioner had a physical altercation with Painter earlier on the day of the crimes during which Painter pulled a handgun on the petitioner; the petitioner ignored his girlfriend's tearful plea that he decline Painter's invitation to come to Murphy's camper later that day; the petitioner drove Bush and Stewart to Murphy's camper around midnight and was aware, at minimum, that Stewart had a shotgun with him; and he assisted Stewart and Bush in fleeing the scene after the victims were killed. Given these facts, it is clear that "the adversarial process at the time . . . worked adequately[,]"[21] particularly where the petitioner was tried on two counts of first degree murder, but was convicted on the lessor included offense of two counts of second degree murder.

While the petitioner's trial might not have been perfect, given "'the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial.'" *State v. Guthrie*, 194 W.Va. 657, 684, 461 S.E.2d 163, 190 (1995) (quoting, in part, *U.S. v. Hasting*, 461 U.S. at 508-09 (1983)). Consequently, employing the precepts under *Strickland* and *Miller*, including our application of the strong presumption that counsel's performance was reasonable and adequate, we are compelled to uphold the circuit court's determination that the petitioner failed to prove by a preponderance of the evidence that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Miller*, 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5, in part. Accordingly, we affirm the circuit court's denial of habeas corpus relief.

Affirmed.

---

[20]As the circuit court observed, although the petitioner's legal expert testified to various professional standards that Mr. Hurley should have met, he had not read the trial transcript nor had he spoken to either Mr. Hurley, the petitioner, or the eye witnesses, making it impossible for him to demonstrate that Mr. Hurley failed to satisfy those standards.

[21]*Miller*, 194 W.Va. at 16, 459 S.E.2d at 127.

**ISSUED:** November 4, 2015

**CONCURRED IN BY:**
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Judge John W. Hatcher, Jr., sitting by special assignment
Judge Jack Alsop, sitting by special assignment

**DISQUALIFIED:**
Chief Justice Margaret L. Workman
Justice Brent D. Benjamin